10-2814-cv
Royal Palm v. Guy Carpenter

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 27th day of May, two thousand eleven.

PRESENT:
> JOHN M. WALKER, JR.,
> BARRINGTON D. PARKER,
> DENNY CHIN,
> > <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - -x

ROYAL PALM INSURANCE COMPANY,
> <u>Plaintiff-Counter-Defendant-Appellee</u>,

> -v.-                                        10-2814-cv

GUY CARPENTER & COMPANY, INC.,
> <u>Defendant-Counter-Claimant-Appellant</u>.

- - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLEE:

> STEVEN B. FEIRSON (Steven A. Engel, Jonathan D. Perry, <u>on the brief</u>), Dechert LLP, New York, New York.

FOR DEFENDANT-COUNTER-CLAIMANT-APPELLANT:

> PAUL R. MONSEES (Jeremy L. Wallison, Akiva M. Cohen, <u>on the brief</u>), Foley & Lardner LLP, New York, New York, and Washington, D.C.

Appeal from a judgment of the United States District Court for the Southern District of New York (Hellerstein, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

Defendant-counter-claimant-appellant Guy Carpenter & Company, Inc. ("Guy Carpenter") appeals from the district court's judgment entered June 22, 2010, in favor of plaintiff-counter-defendant-appellee Royal Palm Insurance Company ("Royal Palm") in the amount of $4,243,581, following the district court's ruling from the bench, on May 21, 2010, on the parties' cross-motions for summary judgment. We assume the parties' familiarity with the facts and procedural history of the case.

We review an order granting summary judgment de novo to determine whether the district court properly concluded that there were no genuine issues of material fact and the moving party was entitled to judgment as a matter of law. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003). "In determining whether there are genuine issues of material fact, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted).

Construed in the light most favorable to Guy Carpenter, the principal facts are as follows: In 2006, Royal Palm started its insurance business in Florida, at a time when reinsurance was difficult to obtain. In April 2006, Royal Palm engaged Guy Carpenter to act as its broker pursuant to a "Reinsurance Intermediary Authorization" (the "RIA"). The RIA recognized Guy Carpenter's right to be paid brokerage commissions on its placement

-2-

of reinsurance; no provision was made for Guy Carpenter to remit any commissions to Royal Palm. The RIA was cancellable at will. By June 1, 2006, Guy Carpenter had earned a projected $7 million in commissions.

In November 2006, Royal Palm and Guy Carpenter entered into the "Broker Services Agreement" (the "BSA"), retroactive to June 1, 2006, whereby Royal Palm recognized Guy Carpenter as its "primary intermediary in the treaty reinsurance market." Guy Carpenter agreed to provide services "in accordance with all relevant laws and regulations." The BSA provided for a three-year term commencing "as of June 1, 2006 and . . . continu[ing] in effect through May 31, 2009." The BSA, a letter agreement from Guy Carpenter to Royal Palm, provided further as follows:

> We will provide services outlined in Appendix B attached hereto for as long as we continue as your reinsurance intermediary. Should you choose to discontinue our relationship, Guy Carpenter's obligation to provide such services shall terminate. . . . If you request additional services outside the scope of services set forth in Appendix B . . . , such additional services may result in extra charges.

Attached as Appendix A to the BSA was a retention schedule that provided for Guy Carpenter to retain 50% of the brokerage commissions for the first year and 60% for the second and third years with the balance to be remitted to Royal Palm. The BSA also provided that it was to be governed by New York law. Guy Carpenter continued to provide services to Royal Palm. On February 15, 2008, however, Royal Palm advised Guy Carpenter that Royal Palm had elected to award its reinsurance business to another broker, and that it was discontinuing its relationship with Guy Carpenter.

-3-

In December 2008, Royal Palm commenced this diversity action below for breach of contract and related claims. Guy Carpenter answered and counterclaimed. Following discovery, the parties cross-moved for summary judgment. The district court issued its oral decision on May 21, 2010, relying principally, if not exclusively, on a Florida statute that provided:

> A transaction between a reinsurance intermediary broker and the insurer it represents . . . may be entered into only pursuant to a written authorization . . . [that] must provide, at a minimum, that . . . [t]he insurer may terminate the reinsurance intermediary broker's authority at any time.

Fla. Stat. § 626.7492(4)(a). The district court concluded that this provision permitted Royal Palm to terminate its relationship with Guy Carpenter at any time. The district court rejected Guy Carpenter's argument that, even though the Florida statute gave Royal Palm the statutory right to terminate, Royal Palm could still be liable contractually for terminating the BSA before the expiration of its three-year term. The district court ruled that the Florida statute would be undermined if there were a financial consequence "every time there was a termination consistent with Florida law." The district court held that Guy Carpenter was obliged to remit to Royal Palm its share of commissions for year 2, and that Royal Palm had no obligation with respect to year 3.

On appeal, Guy Carpenter argues that regardless of whether the Florida statute gave Royal Palm the right to terminate the brokerage relationship, Royal Palm still breached the BSA by terminating it before the end of its three-year term and further that Royal Palm was liable for damages for that breach.[1]

The parties dispute whether the Florida statute bars a party from seeking contractual damages where an agreement does not provide, as Florida law requires, a right to terminate the agreement at will.[2] We need not resolve the dispute, for Guy Carpenter's claim is premised on its assertion that Royal Palm breached the BSA by terminating the relationship before the expiration of the three-year term. We hold, as a matter of law, that Royal Palm did not breach the BSA.

First, § 3 of the BSA advises Royal Palm that "[s]hould you choose to discontinue our relationship," Guy Carpenter's obligations terminate. The plain meaning of these words is that Royal Palm had the right -- contractually -- to discontinue the relationship at any time. See AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 729 n.15 (2d Cir. 2010) ("'[A]

---

[1] Royal Palm submits that, notwithstanding the New York choice-of-law clause in the BSA, the Florida statute governed the relationship between the parties, as Royal Palm was a Florida insurer and Guy Carpenter was a licensed Florida reinsurance intermediary. Guy Carpenter suggests that the district court "very well may have erred by applying Florida law contrary to the parties' intent," but argues that "there ultimately is no conflict between New York and Florida law." We need not resolve the choice-of-law question, in light of our disposition below. Moreover, both sides acknowledge that New York contract principles apply to the construction of the BSA.

[2] Neither side cites any authority to support its respective interpretation of the Florida statute, and our own research reveals no case law construing the Florida statute with respect to this question.

-5-

written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" (quoting Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002))).

Second, although § 1 of the BSA provided for a three-year term, the two provisions are not inconsistent. Together, they provide for an outside limit of three years, subject to Royal Palm's right to terminate early, that is, before the end of the three-year term. Guy Carpenter's construction of these provisions would render the language in § 3 meaningless. See Manley v. AmBase Corp., 337 F.3d 237, 250 (2d Cir. 2003) ("New York law . . . disfavors interpretations that render contract provisions meaningless or superfluous.").

Third, the BSA makes no provision for any modification of the retention schedule in the event of early termination. Given this silence, the plain reading of the BSA is that the retention schedule in Appendix A continues to apply, for the duration of the relationship. "[E]ven though we believe the parties could have contracted" that forfeiture of commissions would result from early termination, "it is quite evident that they neglected to do so." See Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004). In contrast, § 3 specifically addresses the scope of Guy Carpenter's obligations, as set forth in Appendix B, and how those obligations would change in the event of termination.

Fourth, Guy Carpenter argues that it had already earned $7 million in commissions for the first year by June 1, 2006, and that it agreed to remit 50% only because it was bargaining for a three-year agreement. That may be so. But the fact is that the

-6-

BSA, as executed, makes no provision for modification of Appendix A in the event of early termination.

Accordingly, based on the plain wording of the BSA, we hold, as a matter of law, that Royal Palm did not breach its contractual obligations. In view of the lack of ambiguity in the BSA, we need not consider the extensive extrinsic evidence submitted by the parties and will enforce the contract as written. Hunt, Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277-78 (2d Cir. 1989).

We have considered Guy Carpenter's other arguments and conclude they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK